## Smith v. Southern Foundry Company, et al.

(Decided October 14, 1915.)

### Appeal from Daviess Circuit Court.

1. Corporations—Stockholders—Creditors.—A certificate of preferred stock in a corporation organized under the laws of Kentucky is not an evidence of corporate indebtedness, and the holder thereof is a stockholder and not a creditor.

2. Corporations—Issual of Stock—Priority.—Section 564, Kentucky Statutes, authorizes the issual of preferred stock, having a preference over the common stock as to dividends and assets, but such preferred issues have no priority over corporate creditors.

3. Corporations—Dividends—Suit to Enforce Payment of.—A suit to enforce payment of dividends cannot be maintained in the absence of an allegation that dividends have been earned and declared by the directors or that the dividends have been earned and that the directors in bad faith and abuse of discretion have wrongfully failed to provide for their apportionment among stockholders.

DEAN & DEAN for appellant.

MILLER, SANDIDGE & MALIN for appellees.

OPINION OF THE COURT BY JUDGE NUNN.—Affirming.

The question here is whether ownership of a certificate of preferred stock made appellant a corporate creditor or stockholder. The Southern Foundry Company is a Kentucky corporation organized March 9th, 1901. By provision of its charter, its capital stock is fixed at $40,000, consisting of 800 shares of $50 each. These shares are divided into two classes, viz., common and preferred. The corporation was authorized to issue $25,000 of its capital as common stock, and $15,000 of it as preferred.

We quote clause 6 of the charter:

"6. The preferred stock shall constitute a prior and preferred lien on the plant and stock, and all property of the corporation, and it shall be entitled at the end of each fiscal year to a dividend of 7% and no more. At the end of the third fiscal year 10% of said preferred stock shall be redeemed and retired, and at the end of each fiscal year thereafter 10% of said preferred stock shall be redeemed and retired until the entire amount shall have been redeemed and retired. However, it is provided that at the end of second fiscal year the Board

of Directors of said corporation shall have the option of redeeming and retiring all, or any part, of said preferred stock, provided that said part shall be equal to 10% of said stock.''

The charter fixes $20,000 as the maximum indebtedness of the corporation, and exempts the private property of the stockholders from the payment of corporate indebtedness otherwise than as provided by Section 547 of the Statute, as it then existed. That is, no more than double liability.

Appellant was not one of the original incorporators. His interest in the corporation began five years later, the 1st of June, 1906, when the corporation issued to him a certificate for ''40 shares of $50 each of preferred capital stock of the Southern Foundry Company, fully paid and non-assessable.''

The following provision is contained in the certificate:

''The stock is preferred stock and constitutes a prior and preferred lien on the plant and stock, and all the property of the corporation, and bears interest at the rate of 7 per cent. per annum payable annually in the way of dividends, and the holder shall be entitled to receive said interest in the way of annual dividends, on the 9th day of March in each year, and the payment of said annual interest or dividend, and the payment of the par value of said stock (when same shall be payable) shall have preference over the common stock issued by said corporation, as provided in the articles of incorporation of the company. The said annual dividends shall be paid before any dividends shall be declared or paid on the common stock of said company. And at the end of the third year after organization 10 per cent. of said preferred stock shall be redeemed and retired and each year thereafter 10% of said stock shall be redeemed and restored. After two years from the date of its organization said corporation shall have the right and option to redeem and retire any part or all of said preferred stock, provided said part shall be equal to 10 per cent. of said stock. This stock shall not be entitled to participate in the profits or earnings of said company, or to receive any dividend on said stock in excess of the annual 7 per cent. dividend as aforesaid.''

Appellant brought this suit in equity on the certificate referred to, claiming that thereby the corporation promised and agreed to pay to him the sum of $2,000 with

7 per cent. interest thereon annually from its date until paid, and also "promised to pay him one-tenth of said principal sum at the end of the third year after the organization of said corporation, and one-tenth at the end of each year thereafter until all of said principal sum was paid." This allegation was made in the face of the fact that the certificate was not issued to him until five years after the corporation was organized. Except the interest up to March 9th, 1908, he alleged that no part of the principal or interest was ever paid. He alleged further that by the certificate the corporation gave to him a prior lien on the plant and all its other property. After describing the corporate property he alleged that on January 15th, 1909, the corporation executed a mortgage thereon. to H. B. Eagles, as trustee, to secure a bonded indebtedness aggregating $50,000. Averring that he does not know to what extent the bonds have been negotiated or sold, if at all, nor to whom, he asks that the corporation be required to answer and make such disclosures, whereupon he will amend and make the holders parties in order that they may set up their claims. He prays judgment against the corporation for $2,000 and accrued interest at 7 per cent., and that he be adjudged a prior lien on all the corporate property, and that the lien be enforced.

The court sustained demurrer to this petition, and, appellant refusing to plead further, it was dismissed. The appeal is prosecuted from that judgment.

Waiving the question as to whether his debt, if such it may be called, was due at the time the action was instituted, we take up the real question in the case, and the one passed upon below, and that is whether the appellant, by virtue of the certificate, became a stockholder or a creditor of the corporation. His petition is framed upon the idea that he was not a stockholder, and that the writing upon which the action was founded, although styled "A Stock Certificate," was, in fact, a certificate of indebtedness to him on the part of the corporation.

The question is one of interpretation, and, in this case, depends upon the certificate, charter and statutes of the state. Section 564, Ky. Statutes, authorizes a corporation to classify its capital stock into common and preferred shares, and it may give to each of the several classes such priority of right in the payment of the dividends, and in redemption of the shares, as may be pre-

scribed in the rules and regulations adopted by the share-holders; and on the voluntary or other dissolution of the company, the holders of preferred stock are entitled to have their shares redeemed at par, before any distribution of the assets is made among the holders of common stock. This section was not intended, and must not be construed, to give a stockholder of either class a preference over creditors as to the corporate assets. The charter itself recognized the holders of preferred shares as stockholders in the corporation, for such shares are included within the total capitalization of the company. To construe the charter otherwise would mean to limit the authorized indebtedness of the corporation to $5,000, for, if the $15,000 preferred stock be held to be corporate indebtedness, it would practically nullify the provision for $20,000 indebtedness, elsewhere authorized by the charter. Such an interpretation of the charter would be unreasonable and one which would not be given by any person considering an extension of credit to the company. The authorized $20,000 indebtedness was certainly not intended to embrace any of the capitalization.

Priority as to dividends, liens, and redemptions relate to stockholders, and they are rights which the preferred stockholder has over the common. The charter and certificate must be construed in connection with the statute, and in this state there is no statute giving to the holders of preferred stock a lien upon the property of the company to the prejudice of creditors. By the charter the preferred stock is a part of the $40,000 capitalization and by the certificate in question it is stipulated to be a part of the capitalization. The organization tax was paid thereon. Unless that was the purpose of the certificate, and unless the holder thereof be considered a stockholder and not a creditor, then the provision for 7 per cent. dividends would be usurious—in conflict with the statutes.

Except as to preference in the payment of dividends and distribution of the assets, as provided by the certificate and charter, and when authorized by statute, the holders of common and preferred stock have the same rights and are subject to the same liabilities.

"As against creditors a preferred stockholder has no greater rights than a common stockholder, and the corporation cannot give them greater rights in the assets of the corporation as against the creditors, unless by

virtue of an express statutory provision.'' 2 Clarke & Marshall on Private Corporations, Sec. 413.

This text was approved in the case of Fryer v. Wiedemann, 148 Ky., 379 and reasoning therefrom the court concluded that,

''As preferred stock is a part of the capital stock of a corporation, holders of such stock are not preferred to the creditors of the corporation in the distribution of its assets. Consequently, the preferred stockholders cannot be reimbursed before the corporate debts are paid.''

The Fryer case, *supra,* followed the rule laid down in Rider v. The John G. Delker & Sons Co., 145 Ky., 634, where a holder of preferred stock sued a corporation, as in this case, and insisted that he be treated as a creditor rather than a stockholder. The court said:

''The capital of a corporation is the sum total of its stock, whether common or preferred. Certificates of stock are mere evidences that the holders thereof have invested the sums called for in the certificates in the enterprise. They run the risk of losing their stock if the business is not a success. As between themselves and the third persons who deal with the corporation and give it credit, their stock is equally liable. It is only in cases where the corporation is solvent and the rights of creditors will not be injuriously affected thereby that agreements as to preferences among themselves may be enforced. The entire capital, without regard to any arrangement which may exist between common and preferred stockholders, is at all times subject to and liable for the debts of the corporation, and no part of the capital can be withdrawn from the business until the debts of the corporation are satisfied.''

But appellant says that this rule does not apply because there is nothing in the case to show that the corporation is insolvent, and, therefore, he argues, we cannot infer that the rights of any creditors will be prejudiced. This argument is inconsistent because it is based upon the theory that appellant is a stockholder and entitled to have his stock contract enforced with the corporation. As we have already noted, the petition shows that some of the dividend payments are past due. He might be treated as a corporate creditor to that extent, if it had appeared that the directors had declared a dividend or that profits had been earned and the directors had wrongfully refused to declare a dividend.

The use of the word "interest" in the certificate does not require that it be construed as a certificate of indebtedness rather than stock. The provision is, that,

"It bears interest at the rate of 7% per annum, payable annually in the way of dividends, and the holder shall be entitled to receive said interest in the way of annual dividends, etc."

That is, the interest is payable in the way or manner of dividend payments. In other words, the payments are due and payable at such times and in the way dividends are paid—out of the net profits, 7 per cent. and no more. That the words interest and dividends are used interchangeably is shown by the following quotation from the certificate:

"The said annual dividends shall be paid before any dividends shall be declared or paid on the common stock of said company."

Dividends are payable out of the profits and surplus funds of the corporation as the directors may, in the exercise of a sound discretion, declare. Unless the directors are guilty of bad faith or a wilful abuse of discretion, the courts will not interfere. There being no allegation of profits or of bad faith or abuse of discretion on the part of the directors, the presumption follows that there are no profits out of which to pay dividends.

We are of opinion that the petition and exhibits show that appellant is a stockholder and not a creditor. It follows, therefore, that he is not entitled to a judgment against the corporation for any investment he made in the corporate stock. The judgment of the lower court sustaining demurrer to the petition is, therefore, affirmed.